UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ONE MILLION SIX HUNDRED
SEVENTY THOUSAND AND EIGHTY
DOLLARS ($1,670,080.00) SEIZED
FROM AN INTERBANK ACCOUNT
MAINTAINED AT HSBC USA N.A.,
NEW YORK, NEW YORK, BY HSBC
BANK MIDDLE EAST LIMITED,
RAMALLAH, PALESTINE, WHICH SUM
REFLECTS CERTAIN FUNDS DEPOSITED
INTO HSBC BANK MIDDLE EAST LIMITED,
RAMALLAH, PALESTINE, ACCOUNT
NO. 011-005444-087,

    Defendant *in Rem*.
_____/

Civil No.

Honorable

## COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through BARBARA L. McQUADE, United States Attorney for the Eastern District of Michigan, and GJON JUNCAJ, Assistant United States Attorney, and states upon information and belief in support of this Complaint for Forfeiture *in rem* that:

## JURISDICTION AND VENUE

1. This is an *in rem* civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 981(k).

2. This Court has subject matter jurisdiction over this proceeding pursuant to:

    a. 28 U.S.C. § 1345, because this action is being commenced by the United States of America as Plaintiff; and

    b. 28 U.S.C. § 1355(a), because this is an action for forfeiture.

3. This Court has *in rem* jurisdiction over this forfeiture action pursuant to:

    a. 28 U.S.C. § 1355(b)(1)(A), because pertinent acts or omissions giving rise to the forfeiture occurred in the Eastern District of Michigan; and

    b. 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## DEFENDANT *IN REM*

5.      The defendant property consists of One Million Six Hundred Seventy Thousand and Eighty Dollars ($1,670,080.00) seized from an interbank account maintained at HSBC USA N.A., New York, New York, by HSBC Bank Middle East Limited, Ramallah, Palestine, which sum reflects certain funds deposited into HSBC Bank Middle East Limited, Ramallah, Palestine, account No. 011-005444-087, in the name of Waleed M. Yaghmour (hereafter "Defendant Currency").

6.      The defendant *in rem*, or Defendant Currency, identified in Paragraph 5 above was seized pursuant to a federal seizure warrant executed on or around March 20, 2013, by members of the U.S. Internal Revenue Service-Criminal Investigations ("IRS").

7.      The Defendant Currency is subject to forfeiture pursuant to 18 U.S.C. § 981(k) and 21 U.S.C. § 881(a)(6) and/or 18 U.S.C. § 981(a)(1)(C), because it constitutes or is derived from the proceeds of narcotics crimes in violation of 21 U.S.C. §§ 841, 846 and/or health care fraud in violation of 18 U.S.C. § 1347, 1349, a specified unlawful activity as defined by 18 U.S.C. § 1956(c)(7). The Defendant Currency is also subject to forfeiture pursuant to 18 U.S.C. § 981(k) and 18 U.S.C. § 981(a)(1)(A) because it is property involved in money laundering

transactions in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957.

## POSSIBLE COMPANION CASE

8.    This civil forfeiture action arises out of many of the same occurrences or transactions associated with <u>United States vs. Mason, et al.</u>, Criminal Case No. 11-cr-20551 (Honorable Robert H. Cleland). Thus, it is likely that similar evidence will be offered at trial and that the same or related parties will be present.

## FACTUAL BASIS IN SUPPORT OF FORFEITURE

9.    There is evidence that the Defendant Currency is forfeitable to the United States of America pursuant to 18 U.S.C. § 981(k) and 21 U.S.C. § 881(a)(6) and/or 18 U.S.C. §§ 981(a)(1)(A) and/or 981(a)(1)(C). Evidence supporting this determination includes, but is not limited to, the following:

a.    On or about March 20, 2013, a related indictment was unsealed in the Eastern District of Michigan, criminal docket number 11-2055, wherein multiple defendants where charged with conspiracies to Distribute with Intent to Distribute Controlled Substances and Health Care Fraud. The grand jury charged that both conspiracies began on or about January 2008, and that the conspiracies involved the diversion of OxyContin in the Eastern District of Michigan, a controlled substance.

b. The investigation underlying Eastern District of Michigan criminal case number 11-20551 involved, among others, an individual named Waleed Yaghmour ("Yaghmour") and Sav Mart Pharmacy, LLC ("Sav Mart"), which, at all relevant times, was a one-window pharmacy located in a grocery store on Gratiot Avenue in Detroit, Michigan.

c. According to State of Michigan Department of Labor and Economic Growth documents, at all relevant times Yaghmour was listed as the resident agent for Sav Mart.

c. Yaghmour, the pharmacist at Sav Mart, assisted in the criminal activities charged by the grand jury by accepting and filling fraudulent prescriptions presented to him (Yaghmour) by individuals known as "marketers."

d. The role of the "marketers" in the illegal scheme was to gather patients and nominee patients. The "marketers" would arrange for the patients to meet with an individual posing as a doctor or with an actual medical doctor who would prescribe unnecessary medications for the patient and create a fraudulent prescription which bore the name of the particular patient. Another step in this scheme involved

other individuals posing as a medical professional creating bogus medical forms and creating a patient chart for each of the patients and/or nominee patients seen that particular day by an actual doctor or imposter. The bogus records were generated to help justify/legitimize the fraudulent prescriptions being issued in the names of the patients for controlled substances.

e. Yaghmour filled the fraudulent prescriptions, which in turn were provided to the "marketers" who sold the pharmaceuticals, which included OxyContin, on the city streets. "Marketers" usually made cash payments to employees at Sav Mart for the OxyContin. The "marketers" usually presented multiple fraudulent prescriptions for OxyContin to Yaghmour for processing.

f. Additionally, Yaghmour's business partner created a list of additional maintenance drugs to be prescribed along with the OxyContin. The list served as a guide for those individuals prescribing additional medications for non controlled substances in conjunction with controlled substances in an effort to make it appear that controlled substances (OxyContin) was not the sole objective of the scheme. Yaghmour and his business partner also educated individuals on how

to write prescriptions so that they did not appear suspicious and also made suggestions regarding a patient's diagnosis which was recorded inside the patient's chart thus covering the need for the pharmacist to dispense a controlled substance such as OxyContin. At one point in time, "marketers" had so many additional/maintenance medications waiting at Sav Mart, the "marketers" refused to pick up the drugs from Sav Mart. Frequently, these additional medications were never dispensed and remained in Sav Mart's inventory only to be "sold" again. Additionally, Sav Mart billed the nominee patient's pharmaceutical insurance company for reimbursement on the OxyContin prescriptions.

g. Records obtained from two prescription drug wholesale companies McKesson Corporation and The Harvard Drug Company revealed a large increase in sales of 80mg OxyContin tablets to Yaghmour and Sav Mart. The U.S. Drug Enforcement Administration ("DEA") limits the amount of OxyContin that can be sold to each pharmacy and these limitations are controlled by the drug wholesaler.

h. Yaghmour sought increases in OxyContin from McKesson Corporation and based his request on the following reasons:

- patients from nearby pain clinics coming to Sav Mart to fill prescriptions for OxyContin;

- closures of nearby pharmacies which no longer dispense OxyContin; and

- advertisement and promotion of Sav Mart within the local area.

Given the circumstances stated by Yaghmour, Yaghmour was allowed to raise his OxyContin limits on a monthly basis. Yaghmour's request for additional OxyContin was to boost the amounts of OxyContin already being sold on the streets illegally.

i. Following is a chart which summarizes the amount of 80mg OxyContin purchased by Sav Mart from McKesson Corporation and The Harvard Drug Company, which depicts a large spike in purchases during the months of September, October and November 2008:

| DATE | Number of 80mg OxyContin Tablets Purchased |
|---|---|
| Jan 2008 | 6200 |
| Feb 2008 | 7800 |
| March 2008 | 1200 |
| April 2008 | 13200 |
| May 2008 | 15200 |
| July 2008 | 16800 |

| | |
|---|---|
| August 2008 | 14500 |
| **September 2008** | **33200** |
| **October 2008** | **43200** |
| **November 2008** | **39300** |
| December 2008 | 16500 |
| January 2009 | 12000 |
| February 2009 | 8400 |
| March 2009 | 10800 |
| April 2009 | 10800 |
| May 2009 | 11700 |
| June 2009 | 11600 |
| July 2009 | 12800 |
| August 2009 | 12200 |
| September 2009 | 12400 |
| October 2009 | 12000 |
| November 2009 | 9900 |
| December 2009 | 9700 |

## **FINANCIAL DATA & BANK ACCOUNT SOUGHT FOR FORFEITURE**

j.  Yaghmour used several financial institutions, individually, and on behalf of Sav Mart, to channel criminal proceeds he received to an account he held at HSBC Bank, Middle East Limited, located in Ramallah, Palestine.

9

k.     Bank of America Account #XXXX-XXXX-9122, held in the name of Sav-Mart Pharmacy, L.L.C., primarily received gross receipts from Sav Mart which included various medical and pharmaceutical insurance payments and cash. The total amount of cash deposited each year into Bank of America Account #XXXX-XXXX-9122 consisted of the following deposits:

- 2007 total cash deposited: $32,710;
- 2008 total cash deposited: $1,053,700;
- 2009 total cash deposited: $86,520.

A total of 38 cash deposits over $10,000 were made into Bank of America Account #XXXX-XXXX-9122 which totaled $1,255,720 and were made during the period of January 1, 2007 through December 31, 2009. No cash deposits over $10,000 were made into Bank of America Account #XXXX-XXXX-9122 during the entire year of 2007. Over half of the total cash deposits ($658,000) made into Bank of America Account #XXXX-XXXX-9122 occurred during the three months there was a substantial spike in purchases of OxyContin by Sav Mart, which occurred during the months of September, October and November 2008. Yaghmour issued four (4)

checks payable to himself from Bank of America Account #XXXX-XXXX-9122 as follows:

- Check No. 1811, dated March 12, 2008, in the amount of $180,000, made payable to Yaghmour;

- Check No. 1878, dated May 23, 2008, in the amount of $96,000, made payable to Yaghmour;

- Check No. 1904, dated June 13, 2008, in the amount of $120,000, made payable to Yaghmour; and

- Check No. 2079, dated November 25, 2008, in the amount of $250,000, made payable to Yaghmour.

l.  In July 1999, Yaghmour opened personal checking account #XXXXXX7385 at Comerica Bank. At all relevant times, Yaghmour was the sole signatory on Comerica Bank account #XXXXXX7385. Yaghmor endorsed and deposited the four (4) checks he issued from Bank of America Account #XXXX-XXXX-9122 (Check Nos. 1811, 1878, 1904 & 2079) into Comerica Bank Account #XXXXXX7385. Yaghmour made four (4) outgoing international wire transfers, totaling $550,000 from Comerica Bank Account #XXXXXX7385 to beneficiary Waleed Yaghmour at HSBC Bank, Middle East Limited in Ramallah, Palestine (HSBC), Account No. 11-005444-087 as follows:

- On July 22, 2008: $100,000 USD transferred to HSBC Account 11-005444-087;

- On July 29, 2008: $100,000 USD transferred to HSBC Account 11-005444-087;

- On November 26, 2008: $80,000 USD transferred to HSBC Account 11-005444-087; and

- On January 21, 2009: $270,000 USD transferred to HSBC Account 11-005444-087.

m. Yaghmour opened Chase Bank Account #XXXXX4292, a business checking account held in the name of Sav-Mart Pharmacy L.L.C., on or about December 12, 2008. From December of 2008 through October 2009, Yaghmour deposited approximately $854,000 in Chase Bank Account #XXXXX4292 which consisted of various medical and pharmaceutical insurance payments and cash. $850,000 in deposits to Chase Bank Account #XXXXX4292 during the relevant time period were Sav Mart gross receipts. There were no funds drawn from this account for pharmacy type expenditures. Rather, Yaghmour issued three (3) checks from Chase Bank Account #XXXXX4292. Each of the checks were made payable to Yaghmor and totaled $470,000 as noted below:

- Check No. 1001, dated January 23, 2009, in the amount

        of $140,000, made payable to Yaghmour;

- Check No. 1004, dated April 7, 2009, in the amount of $110,000, made payable to Yaghmour; and

- Check No. 1005, dated May 21, 2009, in the amount of $220,000, made payable to Yaghmour.

The funds deposited into Chase Bank Account #XXXXX4292 represent the proceeds of criminal activities conducted by Yaghmour.

n. On December 10, 2008, Yaghmour opened Chase Bank Account #XXXXX3433 a personal checking account. At all relevant times Yaghmour was the signatory authority on Chase Bank Account #XXXXX3433. The three (3) checks from Chase Bank Account #XXXXX4292 (check nos. 1001, 1004, and 1005) were endorsed and deposited into Chase Bank Account #XXXXX3433. Additionally, on September 2, 2009, Yaghmour withdrew $200,000 from Chase Bank Account #XXXXX4292 and transferred the funds ($200,000) to Chase Bank Account #XXXXX3433.

o. Yaghmour made four (4) additional outgoing international wire transfers, totaling $695,080, from Chase Bank Account # XXXXX3433 to beneficiary Waleed Yaghmour at HSBC Bank, Middle East Limited in Ramallah, Palestine (HSBC), Account No.

11-005444-087 as follows:

- On January 23, 2009: $145,000 USD transferred to HSBC Account 11-005444-087;

- On April 7, 2009: $120,000 USD transferred to HSBC Account 11-005444-087;

- On May 22, 2009: $225,000 USD transferred to HSBC Account 11-005444-087; and

- On September 2, 2009: $205,080 USD transferred to HSBC Account 11-005444-087.

p.  On January 13, 2009, Yaghmor opened two (2) additional bank accounts at Bank of America which listed him as the sole signatory on each of these following accounts:

1. Bank of America Account ("BofA") #XXXX-XXXX-4681, a business checking account held in the name of Sav Mart Pharmacy, LLC; and

2. BofA #XXXX-XXXX-9851, a personal checking and money market savings account held in the name of Waleed Yaghmour.

There were numerous account transfers of criminal proceeds originating from Sav Mart's Bank of America Bank Account #XXXX-XXXX-9122 (main operating account) to the two (2) newly opened accounts listed above, both business and personal, controlled by Yaghmour. Details of these transactions are as follows:

| Originating BofA Account | Recipient BofA Account | Date | Amount |
|---|---|---|---|
| XXXX-XXXX-9122 | XXXX-XXXX-4681 | 2/9/2009 | $15,000 |
| XXXX-XXXX-9122 | XXXX-XXXX-4681 | 3/2/2009 | $75,000 |
| XXXX-XXXX-9122 | XXXX-XXXX-4681 | 4/29/2009 | $30,000 |
| XXXX-XXXX-9122 | XXXX-XXXX-9851 | 5/22/2009 | $80,000 (check) |
| XXXX-XXXX-4681 | XXXX-XXXX-9851 | 6/2/2009 | $80,000 |
| XXXX-XXXX-9122 | XXXX-XXXX-4681 | 6/3/2009 | $85,000 |
| XXXX-XXXX-9122 | XXXX-XXXX-4681 | 7/15/2009 | $45,000 |
| XXXX-XXXX-9122 | XXXX-XXXX-4681 | 8/3/2009 | $90,000 |
| XXXX-XXXX-9122 | XXXX-XXXX-4681 | 8/11/2009 | $10,000 |
| XXXX-XXXX-9122 | XXXX-XXXX-9851 | 9/2/2009 | $30,000 |
| XXXX-XXXX-4681 | XXXX-XXXX-9851 | 9/2/2009 | $160,000 |

q. Two (2) additional outgoing wire transfers totaling $425,000 were made by Yaghmour from his Bank of America Account #XXXX-XXXX-9851 to beneficiary Waleed Yaghmour at HSBC Bank, Middle East Limited in Ramallah, Palestine (HSBC), Account No. 11-005444-087 as follows:

- On June 2, 2009: $175,000 USD transferred to HSBC Account 11-005444-087;

- On September 3, 2009: $250,000 USD transferred to HSBC Account 11-005444-087;

15

r.  In total, $1,670,080 was internationally wire transferred by Yaghmour to the HSBC Ramallah, Palestine, Account #11005444087 between the years 2008 and 2009.

s.  Yaghmour did not file a Schedule B with any of his U.S. Individual Tax Returns relating to the years 2007 through 2009. A Schedule B form would have disclosed to the IRS Yaghmour's financial interest or signatory authority over a financial account located in a foreign country, such as Palestine.

t.  The Defendant Currency was deposited into an account located in a bank in Palestine which has interbank accounts in the United States. Pursuant to 18 U.S.C. § 981(k)(1)(A), if funds subject to forfeiture are deposited into an account at a foreign bank, and that foreign bank has an interbank account in the United States with a covered financial institution (as defined in 31 U.S.C. § 5318(j)(1)), the funds subject to forfeiture shall be deemed to have been deposited into that foreign bank's interbank account in the United States.

u.  Accordingly, on or about March 20, 2013, federal agents executed a seizure warrant and seized the Defendant Currency, $1,670,080.00 from an interbank account maintained at HSBC USA N.A., New

York, New York, by HSBC Bank Middle East Limited, Ramallah, Palestine, which represents the proceeds of criminal activities and property involved in money laundering conducted by Yaghmour.

## CLAIMS FOR RELIEF

10. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 9 above, including ay subparagraphs thereunder.

11. There is evidence that the $1,670,080.00 seized from an interbank account maintained at HSBC USA N.A., New York, New York, by HSBC Bank Middle East Limited, Ramallah, Palestine, which sum reflects certain funds deposited into HSBC Bank Middle East Limited, Ramallah, Palestine, account No. 011-005444-087, in the name of Waleed M. Yaghmour $1,670,080.00, are traceable to proceeds derived from violations of federal drug statutes pursuant to 21 U.S.C. §§ 841 and 846, health care fraud pursuant to 18 U.S.C. §§ 1347 and 1349, and also constitute property involved in money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, and therefore are subject to civil forfeiture pursuant to 18 U.S.C. § 981(k), 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C).

## CONCLUSION AND RELIEF

WHEREFORE, Plaintiff respectfully requests that a warrant for arrest of the defendant *in rem* be issued; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the defendant *in rem* to be condemned and forfeited to the United States for disposition according to law; and that the United States be granted such other further relief as this Court may deem just and proper together with costs and disbursements of this action.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

/s/ Gjon Juncaj
GJON JUNCAJ
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9100
Gjon.juncaj@usdoj.gov
[P-63256]

Dated: 8/20/13

## **VERIFICATION**

I, Kristen Nichols, Special Agent with the U.S. Internal Revenue Service, state that I have read the foregoing Complaint for Forfeiture and declare under penalty of perjury that the facts contained therein are true and correct based upon knowledge possessed by me and/or upon information received from other law enforcement agents.

Dated: 08/20/13

*[signature]*
Kristen Nichols, Special Agent
Internal Revenue Service - CID